IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:09-HC-2135-FL

| | | |
|---|---|---|
| ELI NAIN OCASIO, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| NORTH CAROLINA, et al., | ) | |
| | ) | |
| Respondents. | ) | |

This matter came before the court on respondent Michael T. W. Bell's motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (DE # 9). Because respondent has attached matters that are outside of the pleadings, his motion to dismiss is construed as one seeking summary judgment pursuant to Rule 56.[1] Petitioner has responded, and the issues raised are ripe for adjudication. For the following reasons, the court grants respondent's motion.

## STATEMENT OF CASE

On or about January 16, 1995, in the Onslow County Superior Court, petitioner was convicted of two counts of first-degree murder, two counts of first-degree kidnaping, second degree burglary, two counts of larceny of a motor vehicle, breaking and entering, larceny, and safe-cracking. He was sentenced to two consecutive terms of life imprisonment on the murder charges, and to additional consecutive prison terms of fourteen (14) years for second-degree burglary and larceny,

---

[1] Petitioner was informed by the clerk by letter dated January 27, 2010, that the court might treat the motion as one for summary judgment. That letter also informed petitioner of the requirements for responding to a motion for summary judgment under Rule 56.

five years for two counts of larceny of a motor vehicle, nine years for breaking and entering, larceny, and safecracking, and two terms of twelve (12) years for kidnaping. Following his conviction, petitioner filed a direct appeal to the North Carolina Supreme Court. On October 11, 1996, the North Carolina Supreme Court issued an order arresting judgment on the kidnaping counts (which merged with the murder counts) but otherwise finding no error. State v. Ocasio, 344 N.C. 568, 476 S.E. 2d 281 (1996).

On December 20, 2007, petitioner filed a *pro se* motion for appropriate relief ("MAR") in the Onslow County Superior Court.[2] On December 19, 2008, petitioner filed a *pro se* petition for a writ of mandamus in the North Carolina Court of Appeals. On January 8, 2009, the court of appeals dismissed petitioner's mandamus petition without prejudice to re-file if the superior court did not rule on petitioner MAR by February 9, 2009. The superior court summarily denied petitioner's MAR on January 15, 2009. On June 12, 2009, petitioner filed a *pro se* petition for a writ of certiorari in the North Carolina Supreme Court, which was denied on August 27, 2009.

On October 14, 2009, respondent filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[3] Petitioner alleges violations of (1) his right to equal protection of the laws under the Fourteenth Amendment, (2) his right to be free from cruel and unusual punishment under the Eighth Amendment, and (3) his right to effective assistance of counsel under the Sixth Amendment. Petitioner also alleges that the prosecution withheld exculpatory evidence in violation

---

[2] Petitioner's MAR was filed on December 28, 2007, but it is dated December 20, 2007. Providing petitioner the benefit of the mailbox rule, the court will construe the date petitioner filed his MAR as December 20, 2007. See Houston v. Lack, 487 U.S. 266, 276 (1988) (holding that a *pro se* prisoner's notice of appeal is filed at the moment it is delivered to prison authorities for mailing to the district court).

[3] Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 was filed on October 19, 2009, but dated October 14, 2009. Providing petitioner the benefit of the mailbox rule, the court will construe the date petitioner filed his § 2254 as October 14, 2009. See Houston, 487 U.S. at 276.

2

of Brady v. Maryland, 373 U.S. 83 (1963). On January 26, 2010, respondent filed a motion to dismiss, which this court has construed as a motion for summary judgment, arguing that petitioner's habeas petition was filed outside of the statute of limitations, and therefore is time-barred. Petitioner filed a response on February 16, 2010.

## STATEMENT OF FACTS

The facts as stated by the North Carolina Supreme Court, based on the evidence presented at petitioner's trial, are as follows:

> On 12 July 1990, [petitioner] lived in a mobile home in Jacksonville, North Carolina, with his mother, Maria Monserrata (Monserrata), and Gary Fernandez (Fernandez), Monserrata's boyfriend. Also living in the mobile home were Fernandez's son Orlando; Orlando's wife, Lissette; the baby of Orlando and Lissette; Fernandez's son Charlie; and Monserrata's other son, Bruce. Near the beginning of July, Fernandez and Orlando were planning to rob Woodson Music and Pawn Store, which was located in Piney Green Shopping Center in Jacksonville. Fernandez asked Monserrata to participate in the robbery. Fernandez and Monserrata solicited [petitioner's] participation. Fernandez and Monserrata also solicited the participation of Monserrata's daughter, Jeanette, but she refused. [Petitioner] told his friend Mark Watkins about the plans for the robbery, but Watkins declined to participate. The plan consisted of waiting at the home of Scott Gasperson, the store's manager, and Phyllis Aragona, Gasperson's girlfriend who was also a store employee, until they came home from work one evening, kidnaping them, and forcing Gasperson to assist them in taking money and property from the store. On the night of 12 July 1990, the plan was executed.
>
> Monserrata, Fernandez, Orlando, and [petitioner] went to the victims' residence, pried open the front door with a screwdriver, and went inside. Monserrata left, but the three men remained inside. When Aragona arrived at her home, the men bound her with duct tape. [Petitioner] guarded Aragona while Fernandez and Orlando pillaged the house. When Gasperson arrived, they bound him with duct tape as well. At some point, Monserrata returned, and they all went back to the mobile home. [Petitioner] drove Aragona's Chevrolet Blazer and transported the victims, who were still bound with duct tape. Once back at the mobile home, [petitioner] guarded the victims.
>
> On the morning of 13 July 1990, Fernandez left with Gasperson and returned without him. Gasperson's lifeless body was found later that day beside his automobile in a wooded area. Gasperson had suffered a shotgun blast to the head. On 13 July 1990,

Monserrata, Fernandez, Orlando, and [petitioner] traveled in two automobiles to Miami, Florida. The State's evidence showed that the most direct route from Jacksonville to Miami would be south on Highway 53, crossing Highway 41 in Pender County, and then to Interstate 95. Upon their arrival in Miami, the group stayed a couple of weeks and then went to the Dominican Republic. Aragona's decayed body was found approximately nine months later near Highway 53 in Pender County, approximately thirty-five to forty-five miles from Jacksonville.

The evidence also tended to show that two different types of duct tape were used to bind the victims. Pieces of both types were found at the victims' residence and at [petitioner's] residence as well as at the scenes where the victims' bodies were ultimately located. The screwdriver that was used to pry open the front door to the victims' residence was also found at [petitioner's] residence, along with homemade hoods of the type attached to Gasperson's body and of the type found in the trunk of the automobile in which [petitioner] rode to Florida. Property owned by Gasperson and duct tape consistent with the type used to bind the victims were found in a storage unit rented by Orlando. Monserrata, Fernandez, and Orlando were arrested when they fled to the Dominican Republic; however, [petitioner] was not arrested until 1994, when he was taken into custody in New York by agents of the Federal Bureau of Investigation. While in custody in New York, [petitioner] gave a statement to an Onslow County police officer and an agent of the North Carolina State Bureau of Investigation. [Petitioner] was ultimately extradited to North Carolina.

[Petitioner] did not testify at trial but presented the testimony of the bail bondsman who had posted bail for Monserrata and Fernandez to be released from jail on narcotics charges prior to the commission of the crimes charged in this case.

Ocasio, 344 N.C. at 572-74, 476 S.E.2d at 283-84.

## DISCUSSION

A.  Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material

fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

B.  Analysis

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a writ of habeas corpus by a person in custody pursuant to the judgment of a state court must be filed within one year. 28 U.S.C. § 2244(d)(1). The period begins to run from the latest of several dates:

> A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; B) the date on which the impediment to filing an application . . . is removed . . .; C) the date on which the constitutional right was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

The statutory period in this case began to run on the date on which the judgment became final. See 28 U.S.C. § 2244(d)(1)(A). Finality attaches when the Supreme Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires. See Clay v. United States, 537 U.S. 522, 527 (2003); United States v. Sosa, 364 F.3d 507, 509 (4th Cir. 2004). United States Supreme Court Rule 13(1) provides a ninety (90) day window in which to seek certiorari from a judgment or denial of discretionary review. In this case, where the North Carolina Supreme Court denied petitioner's direct appeal on October 11, 1996, petitioner had until January 9, 1997 to seek a petition for writ of certiorari to the

5

Supreme Court. Petitioner did not seek further review, and his conviction thus became final on January 9, 1997. The statute of limitations under AEDPA expired one year later. Petitioner did not file his habeas petition in this court until October 14, 2009, more than ten (10) years after the AEDPA period of limitations had expired. Therefore, the petition is time-barred.[4]

Petitioner, however, alleges that he possesses newly discovered evidence to support a claim regarding his mental state at the time of the crimes. Petitioner states that he has affidavits from Maria Monserrata, dated November 19, 2007, and Gary Fernandez, dated October 23, 2007, stating that his involvement in the crimes at issue was due to manipulation and threats from Gary Fernandez. Accordingly, petitioner appears to assert that § 2244(d)(1)(D), rather than § 2244(d)(1)(A), should be used to calculate the period of limitation. Respondent, however, contends that the affidavits do not constitute newly discovered evidence in that petitioner should have discovered the factual predicate of this claim, if he was acting with due diligence, prior to the execution of the affidavits in 2007. Petitioner does not contest the fact that he knew about the claim regarding Gary Fernandez's influence at trial, but instead argues that he could not raise this claim at an earlier date because it would have been barred pursuant to for lack of evidentiary support pursuant to Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992) ("Unsupported, conclusory allegations do not entitle a habeas petitioner to an evidentiary hearing.").

---

[4] The running of the period of limitation under § 2244(d)(1) is tolled during the time "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2); see Taylor v. Lee, 186 F.3d 557, 560 (4th Cir. 1999). However, tolling is not permitted after the expiration of the statutory period. See Minter v. Beck, 230 F.3d 663, 665–66 (4th Cir. 2000). Petitioner's December 20, 2007 MAR and December 19, 2008 petition for a writ of mandamus were filed after the expiration of the statutory period. Accordingly, petitioner's MAR and mandamus petition did not operate to toll this action pursuant to § 2244(d)(2).

Petitioner's excuse for not bringing his claim regarding Gary Fernandez's influence is unconvincing. In particular, there is evidence in the record that petitioner raised this issue at trial. Petitioner attaches a portion of the trial transcript in which his sister testified about his difficult childhood and about the fact that Gary Fernandez exerted great influence over petitioner's actions. Accordingly, based upon the evidence submitted by petitioner, it is clear that he was aware of his claim regarding Gary Fernandez's influence at the time of his trial and that evidence in support of his claim was presented at trial. The fact that the affidavits of Maria Monserrata and Gary Fernandez were not available sooner does not operate to toll the period of limitation pursuant to § 2244(d)(1)(D). See, e.g., Roberts v. Patton, NO. 8:07-3587-HFF, 2008 WL 3992629 (D.S.C. Aug. 28, 2008) (unpublished) (stating that period of limitation is not tolled pursuant to § 2244(d)(1)(D) merely because an affidavit recanting trial testimony was not available sooner where the petitioner was aware of the factual predicate underlying his/her claim) (citing Hammack v. Quarterman, 2006 WL 1831329 (N.D. Tex. 2006)). Therefore, this tolling claim is without merit.

Petitioner also argues that he recently obtained a copy of the North Carolina Court of Appeals decision in State v. Fernandez, 346 N.C. 1, 484 S.E.2d 350 (1997), which contains exculpatory evidence. Petitioner states that the court of appeals' opinion in Fernandez references testimony from Arthur Bollinger regarding the crimes at issue. Petitioner states that Arthur Bollinger discussed the involvement of Gary Fernandez and Orlando Fernandez with the crimes at issue, but did not mention petitioner. Petitioner states that he discovered the court of appeals' opinion in Fernandez on July 4, 2007. However, the Court of Appeals decided Fernandez on May 9, 1997, and the decision was a matter of public record. Accordingly, if petitioner had acted with due diligence, he could have discovered the factual predicate of his claim well before July 4, 2007. See Wade v. Robinson, 327

Case 5:09-hc-02135-FL   Document 13   Filed 09/08/10   Page 7 of 11

F.3d 328, 333 (4th Cir. 2003) (commencing the limitation period under § 2244(d)(1)(D) when petitioner could have discovered the factual predicate for his claim by reviewing public records). Petitioner has failed to demonstrate that he could not have discovered the evidence prior to the date the statutory period expired. Therefore, § 2244(d)(1)(A) and not § 2244(d)(1)(D) provides the starting date for the period of limitation.

Finally, petitioner argues that he is entitled to equitable tolling on a number of grounds. Even though the purpose of the AEDPA is to "reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism," the Fourth Circuit has held that "the AEDPA statute of limitations is subject to equitable tolling." Rouse v. Lee, 339 F.3d 238, 246 (4th Cir. 2003) (en banc). Nonetheless, the Fourth Circuit has noted the rarity in which equitable tolling applies. "Any invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes. . . . Principles of equitable tolling do not extend to garden variety claims of excusable neglect." Id. at 246 (citing Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990)). Rather, equitable tolling only is "appropriate when . . . extraordinary circumstances beyond [the petitioner's] control prevented him from complying with the statutory time limit." Id. (citation and quotations omitted).

First, petitioner argues that he is entitled to equitable tolling because he has a learning disability. Generally, equitable tolling due to a petitioner's mental capacity is available "only in cases of profound mental incapacity." Sosa, 364 F.3d at 513. This court finds that petitioner's asserted learning disability, in light of the diligence with which petitioner has pursued post-conviction relief and the content of the pleadings he filed with this court, does not give rise to the

8

sort of extraordinary case of "profound mental incapacity" that would justify equitable tolling. Accordingly, petitioner's mental condition does not meet the standard established in Sosa to warrant equitable tolling, and this tolling claim is without merit.

Second, petitioner argues that he is entitled to equitable tolling due to attorney negligence. In support of his claim, petitioner states that North Carolina Prisoner Legal Services ("NCPLS") was unable to represent him because they had a conflict of interest. Accordingly, NCPLS referred petitioner to a private attorney Marvin Sparrow. Petitioner states that Marvin Sparrow waited until two weeks prior to the expiration of the statute of limitations to reveal that he would not file a habeas petition on his behalf. However, an attorney's negligence is not a valid basis to justify equitable tolling. See Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir. 2000) (finding no equitable tolling where "the missed deadline was the result of an innocent misreading of the statutory provision by his counsel"). Additionally, petitioner has not explained the nearly ten-year delay in filing his petition. Accordingly, petitioner fails to satisfy the "extraordinary circumstances" standard and is not entitled to equitable tolling.

Finally, petitioner argues that the period of limitation is tolled because he is actually innocent of first-degree murder. Although the Fourth Circuit has not decided whether claims of actual innocence toll the one-year AEDPA limitation period, other courts have concluded that they do not. See, e.g., Escamilla v. Jungwirth, 426 F.3d 868, 871 (7th Cir. 2005); David v. Hall, 318 F.3d 343, 347 (1st Cir. 2003); Flanders v. Graves, 299 F.3d 974, 977 (8th Cir. 2002); Cousin v. Lensing, 310 F.3d 843, 849 (5th Cir. 2002). But see Souter v. Jones, 395 F.3d 577, 599 (6th Cir. 2005); Gibson v. Klinger, 232 F.3d 799, 808 (10th Cir. 2000). The court need not reach this question, because petitioner has not credibly demonstrated his innocence under the relevant case law.

In order to establish actual innocence sufficient to excuse a procedural default, a petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of new evidence not presented at trial. Bousley v. United States, 523 U.S. 614, 623 (1998); Buckner v. Polk, 453 F.3d 195, 199-200 (4th Cir. 2006). As already noted, petitioner did not diligently pursue either his claim based upon the affidavits of Maria Monserrata and Gary Fernandez or his claim based upon the testimony of Arthur Bollinger, which presumably would be the new evidence on which he would seek to rely. Moreover, even with this new evidence petitioner has not demonstrated that it is more likely than not that no reasonable juror would have convicted him. Based upon the foregoing, petitioner's actual innocence claims are without merit, and the action is time-barred.

C. Certificate of Appealability

Rule 11 of the Rules Governing Section 2254 Cases ("Habeas Rules") provides "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Having determined petitioner is not entitled to relief and respondent is entitled to dismissal of the petition, the court considers whether petitioner is nonetheless entitled to a certificate of appealability with respect to one or more of the issues presented in his habeas petition.

A certificate of appealability may issue only upon a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a petitioner's constitutional claims have been adjudicated and denied on the merits by the district court, the petitioner must demonstrate reasonable jurists could debate whether the issue should have been decided differently or show the issue is adequate to deserve encouragement to proceed further. Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).

10

Where a petitioner's constitutional claims are dismissed on procedural grounds, a certificate of appealability will not issue unless the petitioner can demonstrate both "(1) 'that jurists of reason would find it debatable whether the petition [or motion] states a valid claim of denial of a constitutional right' and (2) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" Rose v. Lee, 252 F.3d 676, 684 (4th Cir. 2001) (quoting Slack, 529 U.S. at 484). "Each component of the § 2253(c) showing is part of a threshold inquiry, and a court may find that it can dispose of the application in a fair and prompt manner if it proceeds first to resolve the issue whose answer is more apparent from the record and arguments." Slack, 529 U.S. at 484-85.

After reviewing the claims presented in the habeas petition in light of the applicable standard, the court finds reasonable jurists would not find the court's treatment of any of petitioner's claims debatable or wrong and none of the issue are adequate to deserve encouragement to proceed further. Accordingly, a certificate of appealability is denied.

## CONCLUSION

For the foregoing reasons, respondent's motion for summary judgment (DE # 9) is GRANTED. Petitioner's petition for a writ of habeas corpus (DE # 1) pursuant to 28 U.S.C. § 2254 is DENIED. The certificate of appealability is DENIED. The Clerk of Court is DIRECTED to close this case.

SO ORDERED, this the 5 day of September, 2010.

LOUISE W. FLANAGAN
Chief United States District Judge

11